**O'DONNELL et al. v. PAN AMERICAN WORLD AIRWAYS, Inc. et al.**

No. 107, Docket 22496.

United States Court of Appeals Second Circuit.

Argued Dec. 4, 1952.

Decided Jan. 7, 1953.

930

Phil E. Gilbert, Jr., New York City (Thayer & Gilbert, New York City, on the brief), for petitioners-appellants.

George J. Solomon, New York City (Landis, Taylor & Scoll and James M. Landis, all of New York City, on the brief), for appellees Former Pilots of American Overseas Airlines, Inc.

John C. Pirie, New York City, for respondent-appellee Pan American World Airways, Inc.

Henry Weiss, New York City, for respondent-appellee Air Line Pilots Ass'n, International.

Before SWAN, Chief Judge, and CHASE and CLARK, Circuit Judges.

CLARK, Circuit Judge.

When in 1950 the Civil Aeronautics Board, acting on instructions of the President of the United States, approved the acquisition by Pan American World Airways, Inc. (PAA) of the assets and business of American Overseas Airlines, Inc. (AOA), it left unsettled, among other problems, the difficult question of seniority among the two groups of pilots. The PAA pilots desired seniority based upon service with PAA, while the AOA pilots desired in substance to take their previous seniority with them to the merged company. The controversy, which had waged for a year before the acquisition, continued for nearly two years thereafter until the CAB, taking jurisdiction, made an award intended to settle the matter. But this determination recognized the rights of the AOA pilots in a way unsatisfactory to the PAA group, who threatened to strike. PAA was of course interested to the extent of preventing a strike against the award, which it was prepared to accept and recognize. Under these conditions the National Mediation Board, acting under 45 U.S.C. § 155, found a labor emergency to exist and offered its services.

As a result of conferences then held, a Mediation Agreement and Articles of Arbitration were agreed upon and executed by PAA and the Air Line Pilots Association, International, the previously designated representative and bargaining agent of all the pilots involved. But the ALPA desired to remain somewhat neutral between its two sets of member pilots; so it allowed the AOA pilots to designate their arbitrator, while PAA permitted its pilots to select the company's arbitrator, these two then selecting the third or neutral arbitrator. In fact the Agreement and Articles were endorsed: "We hereby ratify the action of Air Line Pilots Association, International in executing the foregoing Mediation Agreement and the Articles of Arbitration; and agree that the award to be rendered thereunder shall be final and binding." This was signed: "Veteran Pan American Pilot Group By Henry G. Evans" and "Ex-American Overseas Pilot Group By Emery J. Martin." Evans was the arbitrator selected by the PAA pilots, Martin the arbitrator selected by the former AOA pilots. (Later Evans was succeeded by Frank W. Saul, who eventually dissented from the award made.) The arbitration panel then held thirteen days of hearing, ending April 16, 1952. The present attorney for the petitioners represented the "Veteran Pan American Pilot

Group" and presented among the PAA pilot witnesses some of the petitioners in this case. No question was raised as to the propriety or legality of the proceedings. On May 2, 1952, the arbitrators made their award, setting up a scheme for incorporating the former AOA pilots into the PAA roster, and filed it in the district court. On May 12, 1952, the petitioners filed their petition to impeach and vacate the award under 45 U.S.C. § 159. It is from the district court's denial of this petition on July 31, 1952, that the appeal is taken.

The most serious point raised by the petitioners is that the award is invalid because the controversy was not within the jurisdiction of the National Mediation Board. Here their argument is twofold; first, that the controversy from its nature should have been submitted to the PAA System Board of Adjustment, rather than to the National Mediation Board; second, that it was between two groups of employees, and not between the carrier and a group of its employees as required for the jurisdiction of the Mediation Board. As a further line of attack they urge noncompliance with the controlling provisions of the Railway Labor Act in several details as hereinafter discussed. We turn first to the important matter of jurisdiction.

■ The governing statute is of course the Railway Labor Act of 1934, 45 U.S.C. § 151 et seq., as extended to air carriers by 45 U.S.C. § 181 et seq. Under that Act two differing procedures are set up for the adjustment of disputes between the carrier and its employees or groups thereof susceptible of being settled by agreements between them and of grievances arising under existing employment agreements and affecting individual workmen. The first are within the jurisdiction of the National Mediation Board of three, which uses its good offices to promote settlement or submission to arbitration under the definite statutory rules, 45 U.S.C. §§ 155, 157–159, 183. The second go to the boards of adjustment under the direction of the National Railroad Adjustment Board, 45 U.S.C. §§ 152, 183, 184. The distinction was carefully pointed out and explained in

Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 722–728, 65 S.Ct. 1282, 89 L.Ed. 1886, and adhered to on reargument, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928. See also Garrison, The National Railroad Adjustment Board: A Unique Administrative Agency, 46 Yale L.J. 566, 576. Petitioners assert that this controversy is only one of grievance among employees as to the application of the PAA collective bargaining agreement of 1945 and its successor of October 14, 1950, establishing, *inter alia,* the seniority rights of PAA pilots on the basis of service with the company.

■ We think the petitioners are highly unrealistic in their approach to this issue in either aspect of their twofold argument. Of course they would have liked to have the question of fitting the 140 additional pilots from AOA into the PAA seniority rosters determined entirely by the PAA employment agreements. But this had long since proved impracticable; the disputes had shown that some new form of agreement or award covering this essentially new area of negotiation must be developed. The various steps taken by CAB were in this direction, as was of course the Mediation Agreement of Arbitration. We therefore think the controversy much more than a grievance growing out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions under 45 U.S.C. § 184; rather it is a dispute "concerning changes in rates of pay, rules, or working conditions" or "not referable to an adjustment board" and "not adjusted by the parties in conference" under 45 U.S.C. § 183. Similarly, execution of an award which is about to cause a strike against a carrier involves much more than a grievance among workmen and denotes a dispute which includes the carrier. In Brink v. Pan American World Airways, 2 Cir., 193 F.2d 1009, we upheld a district court decision on this same seniority problem, Petition of Brink, D.C.E.D.N.Y., 98 F.Supp. 135, where the seniority award had not gone to the point of causing strike threats. We think, therefore, that the present case is *a fortiori* one involving the company and that the jurisdictional objection is not well taken.

932

The arbitration proceedings can, moreover, be upheld yet more generally. The statute provides, "The National Mediation Board may proffer its services in case any labor emergency is found by it to exist at any time." 45 U.S.C. § 183, and see also § 155. The threat of a serious strike would seem to be clearly a "labor emergency." And since surely the Mediation Board's proffer is not to be merely an empty gesture, its acceptance by the parties must mean that the statutory processes of arbitration may be thus set in motion. See 60 Harv.L.Rev. 832, 833. Surely this is a situation where conciliation and arbitration are most desirable in the public interest and quite within the spirit of the Act. There is nowhere any countervailing prohibition. Hence, even if, contrary to our view, this was not at first a controversy within the jurisdiction of the Mediation Board, it became so when the Board's order was accepted and acted upon by the parties.

The objections raised as to the procedure followed in the arbitration need not detain us long; we agree with the district judge that they do not establish a lack of substantial conformity with the requirements of the Act. After setting forth the procedure for impeachment of an award, the Act provides: "That an award contested as herein provided shall be construed liberally by the court, with a view to favoring its validity, and that no award shall be set aside for trivial irregularity or clerical error, going only to form and not to substance." 45 U.S.C. § 159, made applicable here by § 181. The chief objections seem to be to certain actions taken by the board of arbitration or permitted to be taken under the Agreement, which were reserved for the parties in the Act itself. These included potential withdrawal of the question before decision, the fixing of the time for making and filing the award, the extension of the time, and the like. But, as we have seen, the arbitrators named by the respective parties in fact and in substance represented them; and we see nothing to prevent recognition of this fact and consequent direct action by the arbitrators. The board was appropriately given power under the Agreement to fix the effective date of the award, which obviously was intended to be final and thereafter binding. Nor do we see anything erroneous in the manner of designating the arbitrators.

It should be noted that an attack originally directed by petitioners upon the power of ALPA's president, Sayen, to sign the arbitration agreement has now been withdrawn. This argument was based on a decision in an unrelated case holding that one Behncke, not Sayen, was lawfully the ALPA's president. Talton v. Behncke, D. C.N.D.Ill., 106 F.Supp. 157, June 25, 1952. The decision was, however, reversed before the argument here. Talton v. Behncke, 7 Cir., 199 F.2d 471, Oct. 16, 1952.

The problem of seniority rights here involved is not one adapted for judicial adjudication; it is properly one for negotiation or arbitration between the parties. The arbitration here appears to us to have been fairly held; hence the award should settle the issue.

Decision affirmed.