George P. BAKER, Richard C. Bond, Jervis Langdon, Jr., and Willard Wirtz, Trustees of the Property of Penn Central Transportation Company, Debtor

v.

UNITED TRANSPORTATION UNION, A.F.L.–C.I.O., et al.

Civ. A. No. 70–2408.

United States District Court, E. D. Pennsylvania.

Sept. 24, 1970.

Herman M. Wells, Richard N. Clattenburg, Philadelphia, Pa., for plaintiffs.

Cornelius C. O'Brien, Jr., Philadelphia, Pa., for defendants.

---

PLAINTIFFS' PETITION AND MOTION FOR INJUNCTIVE RELIEF AND DEFENDANTS' COUNTERCLAIM

FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, AND ORDER

WOOD, District Judge.

1. Plaintiffs are the trustees of the property of Penn Central Transportation Company, a Pennsylvania corporation with its principal office in Transportation Center Building, Six Penn Center Plaza, Philadelphia, Pennsylvania.

2. Defendant United Transportation Union is a labor union and unincorporated association which represents those classes of persons employed by Penn Central Transportation Company known as trainmen and locomotive firemen.

3. The individual defendants are officers of the United Transportation Union.

4. Defendant local lodges are constituent locals of the United Transportation Union.

5. The bargaining agreement between the Company and the Union does not contain any provision either granting or prohibiting the right of the Company to change locations at which the Company gives physical examinations, rules examinations or instruction classes.

6. Rule 1–B–1 of the bargaining agreement between the Company and the Union provides as follows:

"1–B–1. Examinations for (s) (m) (r). When examinations other than physical examinations are given to trainmen, the Company shall arrange for trainmen to take them without loss of time."

7. Between 1956 and 1966 the Company closed ten locations at which physical examinations had previously been given.

8. On April 21, 1966, the Union served upon the Company a notice pursuant to Section 6 of the Railway Labor Act, requesting an amendment to rule 1–B–1. The purpose of the proposed amendment was to compensate trainmen for time spent in undergoing physical examinations.

9. The Union proposals and Company counterproposals are presently docketed for mediation before the National Mediation Board.

10. Between April 21, 1966 and March 2, 1970, the Company changed the following locations for the holding of physical examinations and rules examinations:

a. On April 10, 1968, physical examinations were discontinued at Bellefonte, Pennsylvania.

b. In 1969 the location for rules examinations was changed from Lock Haven, Pennsylvania to Williamsport, Pennsylvania.

c. On January 6, 1970, the location for physical examinations was changed from East Brady, Pennsylvania to Butler, Pennsylvania.

11. On March 2, 1970, the Union served upon the Company a Section 6 notice requesting an amendment to the parties' bargaining agreement which would provide in part:

"Employees shall not be required to submit to examinations, including physical and instructions at locations other than their home terminal or the terminal nearest their place of residence whichever is nearer."

12. The Company and the Union held conferences to discuss this proposal and Company counterproposals but could not reach agreement. On September 1, 1970, the Company requested the National Mediation Board to intervene.

13. Since March 2, 1970, the Company has made the following changes in location for the holding of physical examinations, Book of Rules examinations and Book of Rules instructions classes:

a. In the latter part of March, 1970, the location for Book of Rules instructions classes was moved from Thirtieth Street, Pittsburgh, Pennsylvania, to the Pittsburgh Passenger Station.

b. In July, 1970, the Wilmington, Delaware location for physical examinations was discontinued for annual physical examinations and the hours of operation reduced to accommodate only back to work examinations.

c. In July, 1970, the location for Book of Rules examinations at Derry, Pennsylvania, was discontinued.

14. A conference was held on July 27, 1970, regarding the closing of the Wilmington office, but no agreement was reached.

15. On September 1, 1970, the following letter was sent by Mr. C. E. Wible, General Chairman of the Union to the Company's Director of Labor Relations:

"Authority has been granted for a peaceful withdrawal from the service of the Penn Central Trans. Co. by the employees represented by the United Transportation Union effective at 12:-01 A.M. Wednesday September 2nd, 1970 on account of Carrier officers arbitrarily changing the working conditions in violation of the Railway Labor Act as amended and this Committee Section 6 Notices dated April 21st, 1966 and March 2nd, 1970."

16. On September 2, 1970, the Company obtained a temporary restraining order against the threatened strike. This restraining order has been continued until determination by this Court of the parties' motions for a preliminary injunction.

## DISCUSSION

This action for injunctive relief was instituted on September 2, 1970 by plaintiffs as trustees of the Penn Central Transportation Company to enjoin the allegedly illegal work stoppage and picketing of Company premises threatened by defendant United Transportation Union. The Union has counterclaimed, seeking an injunction against the Company to prevent it from instituting changes in working conditions alleged to be in violation of Section 6 of the Railway Labor Act.

It is not seriously contended by the Union that a strike would not be violative of the Railway Labor Act. The major area of controversy concerns the Union's counterclaim.

The Union's contention is that, because it has two Section 6 notices pending, any unilateral change in working conditions by the Company during that pendency violates the provisions of Section 6. That Section provides that where one party has served on the other a notice of intended change in an agreement affecting rates of pay, rules, or working conditions, the carrier may not change rates of pay, rules, or working conditions while the matter is in conference or is before the National Mediation Board. Therefore, the Union argues, when the Company changed the locations where physical and rules examinations and instructions were given, it clearly violated this prohibition.

The Company sets forth two contentions against the Union's theory. The first concerns only those changes in location which were made after the Union's first Section 6 notice of April 21, 1966, but prior to the notice of March 2, 1970. The Company argues that this notice purported only to compensate trainmen for time spent undergoing physical examinations and had no relationship whatever to the question of where these examinations would be taken. As these changes in location were completely unrelated to the matter in dispute, they were not proscribed by Section 6.

The Company's second contention is directed to all of the changes in location, including those made after the Union's second Section 6 notice. It is argued that the Company had a history of making these changes without the Union's consent. These changes occurred with sufficient regularity and acquiescence on the part of the Union, that the right to make them actually become part of the established working conditions.[1]

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and of the parties.

2. Penn Central Transportation Company is a carrier as defined in Section 1 First of the Railway Labor Act and is subject to the provisions of that Act.

3. United Transportation Union is a representative as defined in Section 1 Sixth of the Railway Labor Act and is subject to the provisions of that Act.

4. The threatened strike will cause irreparable harm to Penn Central Transportation Company. It will result in substantial loss of business and cause a serious interruption of operations.

5. The threatened strike is a violation of the status quo provisions of the Railway Labor Act and should be enjoined.

6. The changes in location of physical and rules examinations and rules classes constituted a change in working conditions within the purview of the Railway Labor Act.

7. Even were we to conclude that the changes made by the Company between April 21, 1966, and March 2, 1970, were violative of Section 6 of the Act, the Union, by seeking no judicial action until this time may not be permitted to force the Company to re-estab-

lish prior locations that have been out of existence for a period of eight months to two years.

8. The changes in location instituted by the Company subsequent to the Union's March 2, 1970 Section 6 notice violated Section 6 of the Act. These changes were directly related to the Union's notice and violated the duty of the Company "to preserve and maintain unchanged those actual, objective working conditions and practices, broadly conceived, which were in effect prior to the time the pending dispute arose and which are involved in or related to that dispute." Detroit & Toledo Shore Line Railroad Company v. United Transportation Union, et al., 396 U.S. 142, 153, 90 S.Ct. 294, 301 (1969). Nevertheless, we feel that at this time, while the dispute is still pending before the National Mediation Board, the Company should not be made to reopen the prior locations. To force it to do so would be to impose too severe a burden, and under equitable principles we decline to so act.

9. Any further changes in location by the Company would be in violation of Section 6 of the Act and should be enjoined.

## ORDER

And now, this 24th day of September, 1970, it is ordered that:

Plaintiffs' motion for a preliminary injunction to enjoin defendants from calling, instigating, authorizing, encouraging, participating in, approving or continuing any strike, work stoppage or slowdown against the Company and all acts in furtherance or in support thereof is granted without prejudice.

Plaintiffs' motion for a preliminary injunction to enjoin defendants from picketing the premises on which the Company conducts its operations, including

---

1. In this contention the Company relies on the language of Mr. Justice Black in Detroit & Toledo Shore Line Railroad Company v. United Transportation Union, et al., (1969) 396 U.S. 142 at pages 153–154, 90 S.Ct. 294, 24 L.Ed.2d 325.

the entrances and any other places where said premises are situated; from interfering with ingress to or egress from said premises by the Company's employees and other persons having business with the Company, including the delivery, unloading, loading, dispatch, and movement of rolling stock and equipment and the contents thereof or from loitering or congregating at or near any approaches thereto and upon any public street or highway leading to and from any place which the employees of the Company or those having business with the Company desire to enter or leave enroute to or from said premises is granted without prejudice.

It is further ordered that the said defendants take all steps within their power to prevent said threatened strike, work stoppage or slowdown from occurring or from continuing if commenced.

Defendants' motion for a preliminary injunction to order plaintiffs to restore to their prior status the locations of physical examinations, Book of Rules examinations and Book of Rules classes which have, since 1966, been discontinued or relocated is denied without prejudice.

It is further ordered that plaintiffs are enjoined from carrying out any further changes in the locations of physical examinations, Book of Rules examinations or Book of Rules classes.

This Order is effective until such time as this matter is settled by the National Mediation Board or until such time as the National Mediation Board notifies the parties that its mediatory efforts have failed and further applicable periods of time provided in the Railway Labor Act have expired.

This Order is preliminary but has been made permanent in effect with the acquiescence of counsel. It closes litigation in this Court of the present issues. "Without Prejudice" of course means that either party, if the circumstances so warrant, may apply to reopen the case or seek other relief if necessary.