Tim B. CAFFERTY, Larry B. Clarke, Howard A. Collins, Jr., Geoffrey S. Curtis, Larry A. Drury, David L. Edwards, Kent G. Ellis, Joseph W. Hanes, Daniel R. McArdle, Raymond L. Streeter, and Scott E. Willson, III, Plaintiffs,

v.

TRANS WORLD AIRLINES, INC., a Delaware Corporation, Defendant.

Civ. No. 80–0216–CV–W–6.

United States District Court,
W. D. Missouri, W. D.

March 12, 1980.

Clem Fairchild and Kelly L. McClelland, Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, Mo., for plaintiffs.

Larry McEnroe, T.W.A., Kansas City International Airport, Kansas City, Mo., and Henry J. Oechler, Jr., Chadbourne, Parke, Whiteside & Wolff, New York City, for defendant.

## MEMORANDUM AND OPINION DENYING PRELIMINARY INJUNCTION

SACHS, District Judge.

Plaintiffs are eleven Trans World Airline (TWA) flight deck crew members who have been laid off, or "furloughed," one as of January 5, 1980, and ten as of February 4, 1980. They seek a preliminary injunction which would have the effect of reinstating them on TWA's payroll pending determination of the merits of this controversy. The furloughs resulted from a lawful reduction in force by TWA in an attempt to reduce its operating deficit. The reduction was implemented according to seniority order. It is agreed, however, that but for a change in retirement policy by TWA in August of 1978, flight deck crew members over age 60 would not have been retained in the capacity of flight engineer, and would therefore not have been higher in seniority than plaintiffs. Except for the change in policy, nine of the plaintiffs would not have been furloughed.[1]

The material facts are not in serious dispute. On August 10, 1978, TWA announced its policy that, in order to comply with the 1978 amendments to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(f)(2), flight engineers would no longer be required to retire from that position upon reaching age 60.

The change in policy was required by the new law, unless TWA made a determination that an age below 70 was a bona fide occupational qualification. Plaintiffs assert that such a determination should have been made, and that their union should have had a role in making the determination, in that retirement policy was a subject for bargaining.

Mandatory age 60 retirement has since that time been confined to the other two members of the flight deck crew, the pilot and the co-pilot, who are prevented by federal regulation from flying in that capacity beyond that age. Immediately upon announcement of the new policy, plaintiffs' exclusive bargaining representative, the Air Line Pilots Association (ALPA) filed suit in the United States District Court for the Southern District of New York, seeking a declaratory judgment that the policy unilaterally announced by TWA violated ALPA's rights under the Railway Labor Act (specifically, 45 U.S.C. § 156) to bargain in respect to all changes in working conditions, and that, as contended by plaintiffs herein, the change in policy was not required by ADEA. *ALPA v. TWA*, Case No. 78 Civ. 3707, in which there was a prayer seeking a preliminary injunction, remains pending in that district before the Honorable Kevin T. Duffy. In December, 1979, when prospective furloughs had been announced, ALPA filed a motion for partial summary judgment seeking an order which would require TWA to bargain over the flight engineer retirement policy. That motion has been fully briefed and is ready for submission to the district court, though both parties have requested oral argument. While ALPA seeks to compel bargaining, no injunctive relief to change the status quo or otherwise reinstate furloughed employees is sought pending bargaining.

The plaintiffs in the instant suit seek a mandatory injunction restoring them to the payroll, which would in effect prevent TWA from effectuating its reduction in force, or would require displacement of other em-

---

1. For present purposes it is assumed that these nine plaintiffs have standing to litigate the issues in this case. By uncontested affidavit, defendant states that two of the plaintiffs were so low in seniority order that they would have been furloughed pursuant to the reduction in force even if the flight deck crew members over age 60 had not been retained. The affidavit thus temporarily establishes that two plaintiffs have no standing; this is not material to the consideration of whether any other plaintiff is entitled to injunctive relief pending litigation.

**1078**

ployees, presumably those flight engineers who have been retained beyond age 60.[2] TWA establishes by affidavit that, in addition to the nine plaintiffs who would be restored to service by an injunction in this case, 35 others were laid off as a result of the retention of the "overage" flight engineers. If all were reemployed, there would either be an additional annual expense to TWA of some $2.2 million or the reinstated employees would receive said sum and the present over-60 employees displaced would lose wages annually in at least that amount.

The present suit and a motion for a temporary restraining order requiring immediate reinstatement were filed February 29, 1980. The Court declined to issue such an order without a hearing, and a preliminary injunction hearing was held March 7, 1980. Having heard testimony, considered affidavits and briefs, and heard arguments of counsel, the Court now denies the motion for a preliminary injunction. This opinion will serve as the Court's findings of fact and conclusions of law under Rule 52(a), F.R.Civ.Proc.

Summarily, the Court believes the case before Judge Duffy has priority, and that this case should probably be transferred to New York for treatment consistent with any determination in the case now pending there. Any bargaining on retirement policies must take place between TWA and ALPA, plaintiffs' union; plaintiffs have no right to bargain directly with TWA individually or as a group. It is possible, moreover, that Judge Duffy will hold that TWA has arguable defenses under collective bargaining agreements which should first be resolved through arbitration procedures before the System Board of Adjustment.[3] In any event, the provisions and purpose of the Railway Labor Act would not be served by the procedures here advocated by plaintiffs.

Litigation in the instant case is primarily based on the contention that defendant was under a duty to bargain, and to maintain the status quo, at least until mediation efforts by the National Mediation Board were exhausted. Plaintiffs have personally sought to invoke the services of the Board by letter dated February 26, 1980, and seek the injunction under the Railway Labor Act, 45 U.S.C. § 156, as applied to airlines through § 183. Although this suit was filed within a reasonable time after plaintiffs' furloughs took effect, notices of intended furloughs were given on November 21, 1979, and the seniority lists which retained flight engineers over 60 in the seniority order were published in January of 1979 and January, 1980. There is no indication that plaintiffs protested the seniority lists, or sought to present grievances. They apparently have been relying solely on ALPA's lawsuit and on ALPA's ability to negotiate a change in TWA's retirement policies. ALPA did not, however, seek to negotiate on that subject when a collective bargaining agreement was negotiated last year.[4]

2. Recognizing that the interests of other parties were at stake, the Court asked that such parties be notified of the hearing on the preliminary injunction. In response to that notice, ALPA attorneys forwarded copies of filings in the New York case; counsel for "overage" flight engineers appeared at the hearing and argued against plaintiffs' contentions. These "overage" flight engineers are in two groups. One group, terminated just prior to the change in policy in 1978, filed suit in the Northern District of Illinois alleging violation of ADEA. The suit was transferred by Judge Grady of that Court upon motion of TWA, and is now also pending before Judge Duffy in New York. The other group consists of flight engineers retained by TWA past age 60, who intervened in support of TWA's policy in the New York litigation brought by ALPA.

3. While deferring to the priority of Judge Duffy's case, the Court notes its impression that TWA's best argument may be that the retirement plan approved by ALPA in general terms allows TWA to retain employees after age 60, by written waiver of the age limit. Although not previously used in this manner, it seems arguable that the provision constitutes a standing consent by ALPA to the action taken by TWA in 1978.

4. ALPA is not before the Court, and cannot respond to the criticism of its litigation tactics which appears occasionally in the filings of both parties. The Court is unwilling to join in criticism of an absent party. If plaintiffs are dissatisfied with their representation by ALPA they may perhaps intervene in the New York

The case cited by plaintiffs which appears to have the most to offer them is *O'Donnell v. Pan American World Airways*, 200 F.2d 929 (2d Cir. 1953). There, as in the instant case, a controversy existed between two contending groups of airline employees (pilots), ALPA was caught in the middle (as bargaining agent for all involved employees), and the services of the National Mediation Board were invoked, under 45 U.S.C. § 183 (the "major dispute" section of the Act on which plaintiffs most strongly rely). The controversy was ultimately settled by arbitration set up voluntarily by the two contending groups of employees, and the Court of Appeals thereafter sustained the arbitration decision.

*O'Donnell* does not, however, taken these plaintiffs very far in that (1) neither of the contending groups of employees sought to invoke the services of the National Mediation Board themselves, and there was no ruling in that case (or any other) that individual employees have standing to invoke such services; (2) it was not validly arguable that any collective bargaining agreement was controlling, as the controversy arose from a merger, in which neither of the preexisting agreements could have resolved the seniority question; (3) ALPA is here already pursuing a different remedy in a different court, advancing plaintiffs' contentions; and (4) there was no issue in *O'Donnell*, as in the instant case, that plaintiffs' objectives might be illegal (requiring TWA to violate ADEA). *O'Donnell* conceivably suggests an ultimate method for disposing of this controversy, but it is so clearly distinguishable that it offers little assistance in deciding this case.

While the Court finds it unnecessary to make a final ruling on the subject, the claim of these individual employees could easily be classified by Judge Duffy as a "minor dispute," not subject to the status quo injunction provisions of the Act (45 U.S.C. § 156), because it conceivably involves a violation of the collective bargaining agreement, and more plausibly involves a defense based on the collective bargaining agreement. *United Transportation Union v. Burlington Northern, Inc.*, 458 F.2d 354 (8th Cir. 1972); *Peterson v. Braniff Airways, Inc.*, 424 F.Supp. 1004 (W.D.Mo.1977, Oliver, Chief Judge).

Plaintiffs are relying solely on a major dispute theory, and if a status quo injunction were authorized under the provisions of the Act for major disputes, it would apparently not be subject to the general equitable principles of *Fennell v. Butler*, 570 F.2d 263 (8th Cir. 1978), cert. den. 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136; *United Transportation Union v. Burlington Northern, Inc.*, supra at 357; *ALPA v. Northwest Airlines, Inc.*, 444 F.Supp. 838, 840 (D.Minn.1977). The delay by ALPA since August, 1978, in seeking a preliminary injunction creates a bizarre situation in ascertaining the "status quo." Under general equitable principles the Court would have little difficulty in denying injunctive relief pending litigation. Compare *Baker v. United Transportation Union*, 317 F.Supp. 768, 771 (E.D.Pa.1970), affirmed on other grounds, *Baker v. United Transportation Union*, 455 F.2d 149 (3d Cir. 1971).

Even if a "major dispute" were involved, as the Court assumes, *arguendo*, the Court doubts that a fair and practical reading of 45 U.S.C. § 183 gives individual employees a right to invoke the jurisdiction of the National Mediation Board to assert their union's right to bargain. Anyone could, of course, call the Board's attention to a situation in which it should intervene sua sponte.

litigation, as others have done. Plaintiffs are entitled to "adequate presentations of all employee claims" by ALPA, both in court and in arbitration, and an assumption is made that ALPA is skillfully and vigorously presenting plaintiffs' case. The assumption is made in part with knowledge of the risks which ALPA might face in the event of negligence or disloyalty. See, e. g., the plurality opinion in *Smith*

*v. Hussmann Refrigerator Co.*, 619 F.2d 1229, (8th Cir. en banc, 1980). On the other hand, if bargaining commences, plaintiffs cannot insist that ALPA ignore the interests of the over-60 group of employees. The ultimate collective bargaining agreement negotiated by ALPA will be binding on all members of the bargaining unit, assuming no illegality.

The clearest reason for denying the injunction is the Court's view that there is no provision of the Railway Labor Act which would give any and all employees an absolute right, as here claimed, to a court-imposed preliminary injunction restoring a status quo which has been dead for more than a year prior to the filing of suit.[5] The assertion of such a right in this case is novel, to say the least; recognition of the right would scatter disruptive power throughout the country, wherever employees of an airline might reside. The Court cannot believe that Congress intended such widespread proliferation of legal time bombs, fused by a letter written to the National Mediation Board by any employee who might assert that his union has a dispute with a carrier. The Railway Labor Act was designed as stabilizing legislation in a field where continuity of operations by carriers is of utmost national importance. The injunctive claim in this litigation in contrary to the letter and the spirit of the Act.

It is therefore ORDERED that plaintiffs' motion for a preliminary injunction be denied.[6]

---

5. In its motion seeking an order to bargain, ALPA made quite clear that it was *not* asking the New York court for a restoration of the status quo as it existed prior to August, 1978, when TWA's age policy was announced, or as it existed in January, 1979, when the first seniority lists reflecting the new policy were promulgated. ALPA apparently considers that it is now too late to obtain a preliminary injunction which would change the status quo rather than preserve it.

6. The Court has examined an affidavit of plaintiffs' counsel pertaining to the National Mediation Board, and an arbitration ruling rejecting a claim of Captain Harold H. Thurston, both submitted to the Court on March 11, 1980. It is unnecessary to modify the above opinion and order in light of said materials.