The ANTIOCH COMPANY, Plaintiff,

v.

WESTERN TRIMMING CORP., d.b.a.
Westrim Crafts, Defendants.

No. C–3–98–236.

United States District Court,
S.D. Ohio,
Western Division.

March 21, 2002.

John Byron Pinney, Thomas William Flynn, Wood, Herron & Evans, Cincinnati, OH, for plaintiff.

Charles Joseph Faruki, Faruki, Gilliam & Ireland, Dayton, OH, John D. Bauersfeld, John E. Kelly, Kelly, Bauersfeld, Lowry & Kelley, Woodland Hills, CA, for defendants.

DECISION AND ENTRY SUSTAINING DEFENDANT'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. # 122); DECISION AND ENTRY OVERRULING, AS MOOT, DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ATTORNEY JEFFREY STANDLEY (DOC. # 135); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, Chief Judge.

The Plaintiff brings this litigation under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the law of Ohio. In its First Claim for Relief, the Plaintiff contends that the Defendant is violating § 43(a), by copying the Plaintiff's product configura-

tion trade dress of its (Plaintiff's) photograph and scrapbook albums and the pages which are placed in those albums. In particular, Plaintiff alleges in its Amended Complaint (Doc. # 62) that for many years it has sold closed-back photograph albums featuring a distinctive "album configuration" trade dress and hinged album pages featuring a distinctive "page configuration" trade dress. Doc. # 62 at ¶ 6. According to the Plaintiff, its closed-back photograph albums contain distinctive features which constitute the "album configuration" trade dress, to wit: two opposed, padded cloth or film encased covers, with the outer corners of each cover being filleted; a spine cover; pages with reinforced edges being visible between the covers; and albums bound by two straps which pass through the slots in the covers and hinge elements which are embedded in the pages. *Id.* at ¶¶ 7–8. The page configuration trade dress is comprised of pages with ribbed or reinforced edges and two or more rectangular shaped hinges embedded on one of the edges. *Id.* at ¶ 9. With its Third Claim for Relief, Plaintiff asserts that the Defendant's conduct underlying its First Claim violates the common law of Ohio. For sake of clarity, the Court will refer to the Plaintiff's First and Third Claims for Relief as the "trade dress claims."

With its Second and Fourth Claims, the Plaintiff contends that Defendant is violating § 43(a) and Chapter 4165 of the Ohio Revised Code, by using photographs of its (Plaintiff's) page protectors in the packaging, utilized to sell plastic, protective cover sheets or page protectors. The parties refer to the Second and Fourth Claims for Relief as "implied passing off claims."

Previously, the Court concluded that the Defendant was entitled to summary judgment on the Plaintiff's Second and Fourth Claims for Relief. *See* Doc. # 142. This case is now before the Court on the Defendant's Renewed Motion for Partial Summary Judgment (Doc. # 122), with which it seeks summary judgment on Plaintiff's First and Third Claims for Relief.[1] As a means of analysis, the Court will initially set forth the standards which are applicable to all motions for summary judgment, partial or otherwise, following which it will turn to the parties' arguments in support of and in opposition to the instant such motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

1. The Defendant previously argued that it was entitled to summary judgment on Plaintiff's trade dress claims, because that trade dress was functional. Applying the then applicable Sixth Circuit precedent *(Marketing Displays, Inc. v. TrafFix Devices, Inc.,* 200 F.3d 929 (6th Cir.1999), *reversed,* 532 U.S. 23, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001)), this Court denied the Defendant's request for summary judgment on those claims. *See* Doc. # 116. However, the Court also indicated that the Defendant could renew its request for summary judgment, if the Supreme Court were to reverse the decision of the Sixth Circuit in *TrafFix Devices. Id.* The Supreme Court did reverse the Sixth Circuit, and the Defendant once again seeks summary judgment on Plaintiff's trade dress claims.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th

Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

With its motion, the Defendant seeks summary judgment on Plaintiff's product configuration trade dress claims, the First and Third Claims for Relief set forth in its Amended Complaint. In particular, the Defendant relies upon the functionality doctrine, arguing that the Plaintiff's claimed trade dress is functional. As a means of analysis, the Court will initially review the legal principles which it will apply to determine whether the Plaintiff's album and page configuration trade dress is functional, following which it will turn to the parties' arguments in support of an in opposition to the Defendant's request for summary judgment on the basis of the functionality doctrine.[2]

In *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001), the Supreme Court addressed the applicability of the doctrine of functionality in a case in which the plaintiff claimed that the defendant was infringing upon its product configuration trade dress. The plaintiff manufactured a type of outdoor advertising signs, with a dual-spring design which helped keep the signs upright in adverse wind conditions. Although utility patents had initially protected the plaintiff's dual-spring design, the plaintiff had sought to extend its monopoly, after those patents had expired, by claiming that the dual-spring design constituted product configuration trade dress. When the defendant manufactured outdoor signs which used the identical dual-spring design, the plaintiff brought suit, alleging that the defendant's design infringed upon its product configuration trade dress. The District Court granted summary judgment to the defendant, concluding that the plaintiff's trade dress was functional. On appeal, the Sixth Circuit reversed, holding that the plaintiff's outdoor sign with a dual-spring design was not functional, because the use

---

**2.** In their memoranda, the parties have not independently addressed the legal standards which are applicable to the Third Claim for Relief, Plaintiff's state law claim. Rather, they contend that the standards for that claim do not differ from those which are applicable to Plaintiff's First Claim for Relief, which arises under the Lanham Act. This Court agrees. Courts have frequently held that the standards by which a claim under § 43(a) of the Lanham Act is to be assessed must be utilized to resolve claims under Chapter 4165 of the Ohio Revised Code. *See e.g., Abercrombie & Fitch v. American Eagle Outfitters, Inc.,* 280 F.3d 619 (6th Cir.2002); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center,* 109 F.3d 275 (6th Cir.1997); *Libbey Glass, Inc. v. Oneida Ltd.,* 61 F.Supp.2d 700 (N.D.Ohio 1999); *Hassell v. Chrysler Corp.,* 982 F.Supp. 515 (S.D.Ohio 1997); *OmniAmerica Group v. Street Gold Records, Ltd.,* 916 F.Supp. 672 (N.D.Ohio 1996); *Worthington Foods v. Kellogg,* 732 F.Supp. 1417 (S.D.Ohio 1990); *Yocono's Restaurant, Inc. v. Yocono,* 100 Ohio App.3d 11, 651 N.E.2d 1347 (1994); *Cesare v. Work,* 36 Ohio App.3d 26, 520 N.E.2d 586 (1987). *See also, Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) (noting that the purpose of the Lanham Act was to codify and unify the common law). Therefore, if this Court concludes that the Defendant is entitled to summary judgment on Plaintiff's First Claim for Relief, it will enter summary judgment in favor of Defendant on Plaintiff's Third Claim for Relief, as well.

of that design was not a competitive necessity. 200 F.2d 929. In particular, the Sixth Circuit concluded that the dual-spring design was not a competitive necessity, because numerous other designs were available to the defendant. *Id.* at 940. Upon further appeal, the Supreme Court reversed the decision of the Sixth Circuit, reiterating that "trade dress protection may not be claimed for product features that are functional." *Id.* at 29, 121 S.Ct. 1255. The Supreme Court also restated the traditional test that a product design is functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *Id.* at 33, 121 S.Ct. 1255 (quoting *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995), quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850, n. 10, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)) (internal quotation marks omitted). In *TrafFix Devices*, the Supreme Court also discussed the effect of an expired patent on a trade dress claim arising out of a product's design:

> The principal question in this case is the effect of an expired patent on a claim of trade dress infringement. A prior patent, we conclude, has vital significance in resolving the trade dress claim. A utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong evidence of functionality based on the previous patent adds great weight to the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection. Where the expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device.

*Id.* at 29–30, 121 S.Ct. 1255. The Supreme Court ultimately concluded that the dual-spring design was functional, because it "provides a unique and useful mechanism to resist the force of the wind." *Id.* at 33, 121 S.Ct. 1255. Functionality having been established, there was no need to speculate about design possibilities. *Id.* Accordingly, the Supreme Court held that the defendant had not infringed upon the plaintiff's product configuration trade dress, by copying the latter's sign, and reversed the judgment of the Sixth Circuit to the contrary.

Recently, the Sixth Circuit applied the teachings of *TrafFix Devices* and the functionality doctrine in *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619 (6th Cir.2002). Therein, the plaintiff had filed suit against a competitor, alleging that the defendant was infringing upon its trade dress in violation of § 43(a) of the Lanham Act and Ohio law. The plaintiff asserted that its trade dress was comprised of various elements which conveyed an overall cutting-edge "cool" image, an image which was exemplified by a number of lines of clothing, such as an active line of casual clothing, reliable clothing, a rugged outdoor line of casual clothing and an athletic line of casual clothing, as well as its product catalog. The District Court granted summary judgment to the defendant, concluding that the plaintiff's claimed trade dress was not trade dress at all, since it was too descriptive or generic and amounted to nothing more than an abstract image or marketing approach. The plaintiff appealed to the Sixth Circuit which affirmed, albeit for different reasons. In particular, the Sixth Circuit rejected the conclusion of the District Court that the plaintiff's claimed trade dress did not constitute trade dress. However, the Sixth Circuit also noted that

the party asserting a claim of trade dress infringement must prove, *inter alia,* that it is nonfunctional. *Id.* at 629. The Sixth Circuit reiterated that the "functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Id.* at 640 (internal quotation marks and citation omitted). The Sixth Circuit also acknowledged that the Supreme Court had held, in *TrafFix Devices,* that "[t]rade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *Id.* (internal quotation marks and citation omitted). The Sixth Circuit also noted that "copying preserves competition, which keeps downward pressure on prices and encourages innovation." *Id.* at 641.[3]

In its previous decision overruling Defendant's request for summary judgment on the Plaintiff's First and Third Claims for Relief, this Court applied the Sixth Circuit's then applicable competitive need test to determine that there was a genuine issue of material fact as to whether the Plaintiff's trade dress was functional. The Defendant initially argues that, in light of the Supreme Court's decision in *TrafFix Devices,* the Sixth Circuit's competitive need test is no longer applicable. This Court agrees, since the Sixth Circuit

adopted that test in its decision in *TrafFix Devices,* a decision which the Supreme Court reversed. *See* 200 F.3d 929 (6th Cir.1999), *reversed,* 532 U.S. 23, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001). Accordingly, this Court will not apply the rejected, competitive need test when ruling upon the Defendant's Renewed Motion for Partial Summary Judgment (Doc. # 122). As a consequence, the Court will not consider whether alternative designs exist, when ruling upon that motion.[4] *See also, TrafFix Devices,* 532 U.S. at 33–34, 121 S.Ct. 1255 ("There is no need, furthermore, to engage, as did the Court of Appeals, in speculation about other design possibilities, such as using three or four springs which might serve the same purpose. 200 F.3d, at 940. Here, the functionality of the spring design means that competitors need not explore whether other spring juxtapositions might be used. The dual-spring design is not an arbitrary flourish in the configuration of MDI's product; it is the reason the device works. Other designs need not be attempted.").[5]

The Defendant asserts that it is entitled to summary judgment, *inter alia,* because the evidence does not raise a genuine issue of material fact as to whether Plaintiff's product configuration trade dress is functional, and that, therefore, such product configuration trade dress is functional and not entitled to protection under either federal or state law. As a means of analysis, the Court will initially review the Plaintiff's allegations in support of its claimed trade dress, following which it will turn to

---

3. In *Abercrombie & Fitch,* the Sixth Circuit concluded that the plaintiff's trade dress was aesthetically functional. Herein, the Defendant does not posit such a claim.

4. In accordance with the Sixth Circuit's decision in *TrafFix Devices,* this Court previously concluded that evidence of alternative possible designs was sufficient to raise a genuine issue of material fact on the question of

whether a competitive necessity supported the Defendant's use of Plaintiff's trade dress and, thus, whether that trade dress was functional. *See* Doc. # 116 at 10–11.

5. Accordingly, the Court rejects the Plaintiff's assertion that the nonfunctional nature of its product configuration trade dress can be demonstrated by showing that alternative designs were available to the Defendant.

the parties' arguments in support of and in opposition to that assertion.

The Plaintiff's alleged trade dress is set forth in ¶¶ 7–9 of its Amended Complaint, which provide:

7. The "closed-back" photograph albums which [Plaintiff] and its predecessors have sold each include, among other distinctive features, two opposed, padded, cloth-or film-encased covers. Each cover has two filleted corners on a forward edge and a portion defining a pocket along a rearward side opposite the forward edge of the cover. Each album also includes a spine cover which has ends extending into pockets in the covers. In addition, each album includes pages visible between the covers, each page having ribbed or reinforced edges.

8. [Plaintiff's] "closed-back" photograph albums are bound by means of two straps, each strap having a cross section of 0.44″ X 0.04″. These straps pass through slots in the covers and through hinge elements or staples which are embedded in the reinforced edge of each page adjacent to the rearward edges of the album covers so as to present apertures of approximately 0.50″ X 0.11″. The ends of the straps are in slots in the cover holders which are positioned between the covers and the pages.

9. The hinged album pages which [Plaintiff] and its predecessors have sold each include, among other distinctive features, ribbed or reinforced edges and two or more hinged elements or staples embedded in one of the ribbed or reinforced edges so as to present an aperture of approximately 0.50″ X 0.11″.

Doc. # 62 at ¶¶ 7–9.[6]

■ The Defendant contends that each of the components in the Plaintiff's claimed product configuration trade dress is functional under the test set forth in the Supreme Court's decision in *TrafFix Devices*. For reasons which follow, this Court agrees. However, it bears repeating that the Supreme Court in *TrafFix Devices* restated the traditional test that product configuration trade dress is functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." 532 U.S. at 33, 121 S.Ct. 1255.[7] In addition, the Plaintiff has the burden of establishing that its trade dress is nonfunctional, *Id.* at 26, 121 S.Ct. 1255, and, thus, subject to the protection of the Lanham Act and the common law of Ohio.

---

6. The Defendant contends that the Plaintiff's claimed trade dress has presented a moving target throughout this ligation. According to the Defendant, the Plaintiff has continued that tendency by describing its trade dress in its memorandum opposing Defendant's motion, in a manner which is not entirely consistent with the allegations in its (Plaintiff's) Amended Complaint. *See* Doc. # 128 at 1 fn. 1. Since the Court relies upon the Plaintiff's allegations concerning its trade dress contained in its Amended Complaint, it is not necessary to decide whether the Defendant is correct in arguing that the Plaintiff has attempted to re-characterize its trade dress in its memorandum opposing Defendant's motion. Parenthetically, the Court notes that Plaintiff has not sought leave to amend its most recent pleading to add to or alter in any way the nature of its claimed trade dress.

7. The Plaintiff argues that the evidence raises a genuine issue of material fact as to whether its product configuration trade dress is functional, since there is evidence that the various features do not affect the cost of the albums and their pages. *See* Doc. # 128 at 12. Assuming for present purposes that there is evidence that the various features of Plaintiff's trade dress do not affect cost, the Court cannot conclude that there is, as a result, a genuine issue of material fact on whether Plaintiff's product configuration trade dress is functional, since the above-quoted test from the Supreme Court on functionality is phrased in the disjunctive.

■ In *TrafFix Devices*, the Supreme Court held that the dual-spring design was the central component of claimed trade dress. Herein, this Court notes that the essential feature of the Plaintiff's claimed product configuration trade dress is its dual strap hinge design, which is unquestionably functional. That is the manner by which the Defendant's albums are held together. The straps on the album covers go through the rectangular openings on the pages, which are called staples, and, thus, hold the covers and pages together. Moreover, the dual strap hinge design permits the pages in Plaintiff's albums to lie flat. Indeed, in its advertising, Plaintiff has touted its patented strap hinge design as allowing pages to lie flat, as well as permitting pages to be turned and added easily.

■ The Plaintiff also claims as part of its product configuration trade dress the album covers, which are either padded or film encased and have filleted or rounded corners. It is not questioned that covers for an album are functional, given that a cover affects the quality of such a product. Related to the album covers, the Plaintiff claims that the spine cover is part of its trade dress. In its decision affirming this Court's refusal to enter a preliminary injunction in favor of the Plaintiff, the Sixth Circuit noted that the spine cover was "purely functional." *The Antioch Co. v. Western Trimming Corp.*, 1999 WL 777556, at *4 (6th Cir.1999). The Plaintiff has not pointed to any evidence which would cause this Court to conclude that there is a genuine issue of material fact as to whether the spine cover is functional.

Another feature of the Plaintiff's product configuration trade dress is the reinforced or ribbed edges of its pages. The evidence fails to raise a genuine issue of material fact as to whether such edges of Plaintiff's pages are nonfunctional. During the hearing on Plaintiff's request for a preliminary injunction, Peter Mascolo, Plaintiff's Vice President of International Markets, testified that the ribbed edges, which the Plaintiff also calls "jeeping," performed the following functions, to wit: reinforcing the pages; keeping pages separated and, thus, permitting air to circulate between them; and holding the staples in place on a particular page. Transcript of July 13, 1998 Hearing (Doc. # 18) at 153–54. Given that the reinforcing strips perform those functions and in the absence of contrary evidence, this Court is compelled to conclude that this feature affects the quality of the Plaintiff's product. Without the reinforcing, the staples would not remain attached to the pages, and the Plaintiff's method of securing the album covers and pages together would not work.[8]

Plaintiff argues that, to determine whether its trade dress is functional, the Court must consider the overall appearance of its albums and pages and not just the component parts of the trade dress. This Court cannot agree. In *Leatherman Tool Group, Inc. v. Cooper Industries*, 199 F.3d 1009 (9th Cir.1999), a case decided under similar facts, the Ninth Circuit considered and rejected a similar argument. Therein, the plaintiff, the manufacturer of a multi-purpose pocket tool,[9] brought a trade dress infringement action against the defendant, which manufactured a com-

---

**8.** In its memorandum opposing Defendant's renewed request for summary judgment, the Plaintiff argues that the size, shape and spacing of the stitching of the reinforcing are nonfunctional. Doc. # 128 at 18. Since the Plaintiff has not alleged in its Amended Complaint that such are part of its trade dress, the Court need not consider the question of whether those items are nonfunctional.

**9.** The plaintiff's product was said to improve upon the design of the Swiss army knife. 199 F.3d at 1010.

peting pocket tool. The defendant had admittedly copied the plaintiff's pocket tool almost exactly. The plaintiff obtained a jury verdict, indicating that the defendant had infringed upon its trade dress which was comprised of the overall appearance of its product. The product was a multi-purpose pocket tool, which was comprised of various tools such as pliers. The overall appearance included the size and shape of those tools. Thereafter, the District Court overruled the defendant's motion for judgment as a matter of law, which was predicated on the theory that the plaintiff had failed to prove that the entire design of its product was nonfunctional. Upon appeal, the Ninth Circuit reversed. In particular, the Ninth Circuit concluded that, where the component parts of product configuration trade dress are functional, "it is semantic trickery to say that there is still some sort of separate 'overall appearance' which is non-functional." *Id.* at 1013. The Ninth Circuit explained:

> If it is permissible to draw a distinction between such an object and its "general appearance," then virtually nothing is utilitarian, and virtually the only product designs which could be copied faithfully

are those which are widely used and therefore in the public domain. Such a result would be wholly inconsistent with the principles and authorities discussed above.

*Id.* This Court finds the result reached and the rationale employed by the Ninth Circuit therein to be persuasive. In the absence of any authority to the contrary authored by the Supreme Court or the Sixth Circuit, this Court will follow that decision.[10] Therefore, the Court holds that the overall appearance of Plaintiff's albums and pages do not constitute protectable trade dress, since the components of that trade dress are functional.

Based upon the foregoing, the Court concludes that the evidence fails to raise a genuine issue of material fact as to whether the Plaintiff's claimed product configuration trade dress is functional. Rather, the uncontroverted evidence causes this Court to conclude, as a matter of law, that said trade dress is functional.[11]

Accordingly, the Court sustains the Defendant's Renewed Motion for Partial Summary Judgment (Doc. # 122). Judgment is to be entered in favor of Defendant and against Plaintiff.[12]

---

**10.** The Plaintiff has cited *O & W Thum Co. v. Dickinson*, 245 F. 609 (6th Cir.1917), *cert. denied*, 246 U.S. 664, 38 S.Ct. 334, 62 L.Ed. 928 (1918), to support its assertion that the Court must examine the overall appearance of its trade dress to determine whether it is functional. Therein, the Sixth Circuit addressed the question of whether the marks used by the defendants on their brands of sticky fly paper infringed upon plaintiff's registered trade mark for that type of product. The Sixth Circuit did not remotely consider whether the overall appearance of product configuration trade dress can be nonfunctional, if its components are functional. Accordingly, this Court concludes that *O & W Thum* is not contrary to the Ninth Circuit's decision in *Leatherman*.

**11.** Given the Court's conclusion that the Plaintiff's trade dress is functional under the

traditional test for functionality reiterated by the Supreme Court in *TrafFix Devices*, it is not necessary to address Defendant's alternative argument (and Plaintiff's rejoinder thereto) that it is entitled to summary judgment, because the features of Plaintiff's trade dress were claimed in its expired utility patents. It is also unnecessary to address the Defendant's assertion its use of Plaintiff's functional strap hinge design is a fair use.

**12.** Since the Court has sustained the Defendant's Renewed Motion for Partial Summary Judgment (Doc. # 122), the Defendant has been awarded summary judgment on all of Plaintiff's claims. Therefore, no trial will be held in this litigation, and the Court overrules, as moot, Defendant's Motion in Limine to Exclude Testimony of Attorney Jeffrey Standley (Doc. # 135).

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.